Hand-Delivered

FILED
CHARLOTTE, NC
UNITED STATES DISTRICT COURT — WESTERN DISTRICT OF NORTH CAROLINA
OCT - 7 2026
US DISTRICT COURT
WESTERN DISTRICT OF NC

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**JOSHUA ADAM BROWN,**
Plaintiff,

CIVIL ACTION NO.: 3:26-cv-847-KDB

**JURY TRIAL DEMANDED**

v.

**SUPER MICRO COMPUTER, INC.**
and **CHARLES LIANG,**
Defendants.

# COMPLAINT FOR A CIVIL CASE

## I. PARTIES

**1.** Plaintiff Joshua Adam Brown ("Plaintiff") is a citizen and resident of the State of North Carolina, residing at 6423 Starlette Ln., Trinity, NC 27370. At all relevant times, Plaintiff was employed by Defendant Super Micro Computer, Inc. as Director of Sales for Team 6 (T6), performing his employment responsibilities from North Carolina with primary operational reporting and accounts assigned to federal and public sector clients in Charlotte, NC, and nationwide.

**2.** Defendant Super Micro Computer, Inc. ("SMCI") is a Delaware corporation with its principal place of business located at 980 Rock Ave, San Jose, CA 95131. Defendant SMCI manufactures and sells high-performance server hardware and enterprise IT solutions, is authorized to conduct business in the State of North Carolina, and regularly engages in commercial operations within the Western District of North Carolina.

**3.** Defendant Charles Liang ("Liang") is an individual who, at all relevant times, served as the President, Chief Executive Officer, and Chairman of the Board of Directors of Defendant SMCI, with a principal business address at 980 Rock Ave, San Jose, CA 95131.

## II. JURISDICTION AND VENUE

**4.** This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) as Plaintiff's claims arise directly under federal laws, including the statutory whistleblower protections for contractor employees under 10 U.S.C. § 4701 and 41 U.S.C. § 4712 (National Defense Authorization Act / Defense Federal Acquisition Regulation Supplement Subpart 203.9), the Sarbanes-Oxley Act (18 U.S.C. § 1514A), and the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.).

**5.** This Court also possesses supplemental jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. § 1367(a) as they form part of the same case or controversy.

Furthermore, jurisdiction is properly supported under 28 U.S.C. § 1332 (Diversity of Citizenship) as Plaintiff is a citizen of North Carolina, Defendants are citizens of California, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**6.** Venue is proper in the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, omissions, and unlawful employment practices giving rise to Plaintiff's claims occurred in this judicial district and division, where Plaintiff performed his duties, maintained his sales operations, and suffered retaliatory discharge.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**7.** On August 15, 2025, Plaintiff timely submitted a formal Whistleblower Reprisal Complaint with the Department of Defense Office of Inspector General (DoD OIG Case No. 20250822-105784-CASE-01) pursuant to 10 U.S.C. § 4701 and 41 U.S.C. § 4712, alleging retaliatory discharge following protected disclosures regarding export control violations and financial misrepresentations.

**8.** Plaintiff actively participated in the DoD OIG Alternative Dispute Resolution (ADR) program from August 2025 through March 2026. On March 30, 2026, the DoD OIG officially issued a formal case closure letter (Case No. 20250822-105784-CASE-01), concluding the administrative process.

**9.** Because more than 210 days have elapsed since the filing of the administrative complaint and administrative remedies have been fully exhausted, Plaintiff holds a statutory right to bring this de novo civil action in Federal District Court pursuant to 10 U.S.C. § 4701(c)(2) and 41 U.S.C. § 4712(c)(2).

## IV. FACTUAL ALLEGATIONS

**10.** Plaintiff Joshua Brown holds an MBA in Aerospace and Defense (ADMBA) and a Master's Certificate in Supply Chain, with over 15 years of distinguished experience in enterprise IT, defense contracts, and strategic sales. Plaintiff was hired by Defendant SMCI in June 2022 as Director of Sales for Team 6 (T6), with primary responsibility for driving public sector and federal contractor revenue.

**11.** On or about September 30, 2022, shortly after joining SMCI, Plaintiff was diagnosed with Chronic Lymphocytic Leukemia (CLL). Plaintiff disclosed his medical condition to Human Resources and sales management. Plaintiff continued working full-time without requesting formal leave, maintaining high performance standards. In July 2023, Plaintiff received a formal performance review scoring 'meets expectations' (2.93/5 overall score).

**12.** During his tenure, Plaintiff completed mandatory annual compliance training conducted by SMCI in San Jose, CA, focusing on U.S. Export Administration Regulations (EAR) and

International Traffic in Arms Regulations (ITAR). The training explicitly stated that high-performance computing hardware integrating advanced NVIDIA GPUs (including H100/B200 series accelerators) listed on the Commerce Control List (CCL) could not be sold or exported to entities on the Bureau of Industry and Security (BIS) Entity List, specifically including entities in the People's Republic of China, without explicit federal export licenses.

**13.** In mid-July 2023, SMCI executive leadership and marketing distributed an internal memo and success story to company-wide sales personnel, boasting of a major high-performance computing deal incorporating restricted NVIDIA GPU hardware delivered to the University of Science and Technology of China (USTC)—an entity placed on the U.S. BIS Entity List.

**14.** Recognizing that selling restricted computing infrastructure to USTC violated federal export control laws and contradicted mandatory training, Plaintiff engaged in protected whistleblowing activity by replying-all to the executive email. Plaintiff's written disclosure was delivered directly to executive leadership—including CEO Charles Liang, Senior VP of Business Development Yih-Shyan "Wally" Liaw, Senior VP Phidias Chou, Global VP Don Clegg, and Group Lead Brian Lahoue—explicitly warning that SMCI was prohibited under federal regulations from selling such restricted hardware to Chinese entities.

**15.** SMCI leadership did not investigate Plaintiff's compliance disclosure. Instead, on or about August 14–17, 2023—approximately one month after Plaintiff's protected disclosure—SMCI executed a swift, retaliatory discharge against Plaintiff.

**16.** The termination meeting was conducted by Co-Founder and Board-level insider Sara (Sarah) Chiu-Chu Liu Liang (spouse of CEO Charles Liang) and Manager Brian Lahoue. When Plaintiff explicitly inquired as to the reason for his firing and reminded leadership that he was actively undergoing cancer treatment, Ms. Liu Liang provided no substantive justification. SMCI later attempted to manufacture a pretextual performance rationale, citing an $11,133 revenue figure against an unachievable $2 million quota, while omitting that SMCI restricted Plaintiff's CRM tools, pipeline visibility, and quoting systems.

**17.** In June 2025, Plaintiff voluntarily met with federal special agents from the Defense Criminal Investigative Service (DCIS) and the Department of Defense/Department of Justice. Plaintiff provided federal law enforcement with a detailed operational roadmap and digital forensics—including archived HubSpot CRM audit logs and LinkedIn records—detailing how SMCI structured its illicit foreign shipments, altered customer records, and bypassed export compliance.

**18.** On March 19, 2026, the Department of Justice unsealed a federal criminal indictment in the U.S. District Court for the Southern District of New York (26 Cr. 100) charging SMCI Co-Founder and Senior VP Yih-Shyan "Wally" Liaw, Taiwan Sales Manager Ruei-Tsang "Steven" Chang, and third-party broker Ting-Wei "Willy" Sun with conspiracy to violate

the Export Controls Reform Act (50 U.S.C. § 4819) and goods smuggling (18 U.S.C. § 554). The indictment detailed a $2.5 billion illegal scheme to divert restricted NVIDIA GPU AI servers to China—fully validating the exact export violations Plaintiff reported internally in July 2023 and proffered to federal agents in June 2025.

**19.** On August 31, 2026, SMCI's independent auditor, BDO USA, issued an adverse opinion on SMCI's internal controls over financial reporting in its FY26 Form 10-K, legally confirming to the SEC that SMCI's internal compliance controls were materially deficient and broken—shattering SMCI's defense and proving Plaintiff's 2023 disclosures were accurate.

## V. CAUSES OF ACTION

### COUNT I: Statutory Whistleblower Retaliation (10 U.S.C. § 4701 / 41 U.S.C. § 4712)

**20.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 19 as if fully set forth herein.

**21.** At all relevant times, Defendant SMCI was a federal contractor and subcontractor subject to the statutory whistleblower protections of 10 U.S.C. § 4701 and 41 U.S.C. § 4712.

**22.** Plaintiff engaged in protected activity under 10 U.S.C. § 4701(a)(1) and 41 U.S.C. § 4712(a)(1) by disclosing to management and individuals with responsibility to investigate misconduct information that Plaintiff reasonably believed evidenced violations of law, rule, and regulation relating to federal contracts and national security export controls.

**23.** Defendants had actual knowledge of Plaintiff's protected activity. Within approximately one month of Plaintiff's protected disclosure, Defendants subjected Plaintiff to an adverse personnel action by discharging him from employment.

**24.** Plaintiff's protected activity was a contributing factor in Defendants' decision to terminate his employment. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered severe economic, physical, and emotional harm.

### COUNT II: Disability Discrimination & Failure to Accommodate (42 U.S.C. § 12101 et seq.)

**25.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 24 as if fully set forth herein.

**26.** Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act (ADA), having been diagnosed with Chronic Lymphocytic Leukemia (CLL), a physical impairment that substantially limits one or more major life activities.

**27.** Defendants had full notice of Plaintiff's cancer diagnosis and medical treatment. Defendants failed to engage in a good-faith interactive process or offer reasonable accommodation, and instead subjected Plaintiff to adverse employment action by terminating him while he was actively undergoing cancer treatment under manufactured performance pretexts.

**28.** Defendants' discriminatory termination of Plaintiff during active cancer treatment was intentional, willful, and in reckless disregard of Plaintiff's federally protected rights.

**COUNT III: Wrongful Discharge in Violation of Public Policy (North Carolina Common Law)**

**29.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

**30.** North Carolina expresses a clear public policy encouraging compliance with U.S. export control laws, national security directives, corporate financial integrity, and prohibiting disability discrimination and termination of employees undergoing life-threatening medical treatment.

**31.** Defendant SMCI violated North Carolina public policy by discharging Plaintiff in retaliation for his internal disclosures regarding export control non-compliance and because of his cancer diagnosis.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Adam Brown respectfully requests that this Court enter judgment in his favor and against Defendants Super Micro Computer, Inc. and Charles Liang, granting the following relief:

a. Back pay, front pay, and lost past and future compensation, including lost commissions, unvested Restricted Stock Units (RSUs), and stock options;

b. Compensatory damages for emotional distress, reputational harm, career disruption, and medical liabilities incurred as a result of wrongful discharge;

c. Punitive and exemplary damages as permitted by law for Defendants' willful, malicious, and reckless conduct;

d. Mandatory statutory attorney's fees, expert witness fees, litigation expenses, and court costs pursuant to 10 U.S.C. § 4701(c)(1)(C) and 41 U.S.C. § 4712(c)(1)(C);

e. Pre-judgment and post-judgment interest at the highest legal rate; and

f. Such other and further legal and equitable relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues and counts so triable.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury under the laws of the United States of America that the information contained in this Complaint for a Civil Case is true and correct to the best of my knowledge, information, and belief. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at Trinity, North Carolina on October 6, 2026.

______________________________

**JOSHUA ADAM BROWN**
Plaintiff Pro Se
6423 Starlette Ln.
Trinity, NC 27370
Telephone: (828) 798-8924
Email: jb@v3yl.com