**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| JOSHUA ADAM BROWN,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., and CHARLES LIANG,<br><br>Defendants. | Civil Action No. 3:26-cv-00847 |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. STANDARD OF REVIEW .......... 7

IV. ARGUMENT .......... 8

A. Brown's Claims Fail as a Matter of Law. .......... 8

1. Brown Fails to State NDAA and DCWPA Retaliation Claims. .......... 8

2. Brown's ADA Claims Must Be Dismissed for Failure to Exhaust Administrative Remedies. .......... 11

3. Brown's Wrongful Termination Claim Is Barred by the Statute of Limitations. .......... 12

B. As an Independent Basis for Dismissal, Brown Should Be Judicially Estopped from Pursuing His Claims. .......... 13

C. Liang Is Not a Proper Defendant. .......... 20

V. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Anderson v. Fed. Deposit Ins. Corp.*,
918 F.2d 1139 (4th Cir. 1990) ....................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Crawford v. Newport News Indus. Corp.*,
No. 14-130, 2018 WL 3232827, at *6 (E.D. Va. Feb. 12, 2018), *report and recommendation adopted*, 2018 WL 1588024 (E.D. Va. Apr. 2, 2018)................13, 14, 15, 18

*Ficarra v. SourceAmerica*,
No. 19-01025, 2020 WL 1606396 (E.D. Va. Apr. 1, 2020) ....................9, 10

*Flores v. OneWest Bank, F.S.B.*,
886 F.3d 160 (1st Cir. 2018)....................4

*Fullard v. City of Raleigh*,
No. 23-49, 2024 WL 232185 (E.D.N.C. Jan. 22, 2024) ....................11

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ....................4

*Goldfarb v. Mayor & City Council of Balt.*,
791 F.3d 500 (4th Cir. 2015)....................5

*Harris v. American Airlines, Inc.*,
No. 17-00280, 2017 WL 2880400 (W.D.N.C. Jul. 6, 2017)....................11

*Harris v. Cmty. Alts.*,
No. 11-52, 2011 WL 2111851, at *2 (E.D.N.C. May 26, 2011) ....................13

*Henderson v. Franklin*,
782 F. App'x 866 (11th Cir. 2019) ....................17, 19

*Horton v. Dep't of Navy*,
66 F.3d 279 (Fed. Cir. 1995)....................10

*Hospodor v. Burlington Indus., Inc.*,
205 F.3d 1333, 2000 WL 203933 (4th Cir. 2000) (unpublished table decision)....................11

*Jones v. Sternheimer*,
387 F. App'x 366 (4th Cir. 2010) (per curiam) ....................20

*Kappouta v. Valiant Integrated Servs., LLC*,
60 F.4th 1213 (9th Cir. 2023) ....................9

*Keathley v. Buddy Ayers Constr., Inc.*,
608 U.S. 647 (2026) ....................14, 19

*Krzesni v. Wellpinit Sch. Dist.*,
182 F.4th 1147 (9th Cir. 2026) ....................10

*Lorbacher v. Hous. Auth. of the City of Raleigh*,
493 S.E.2d 74 (N.C. Ct. App. 1997) ....................20

*MacBagito v. PricewaterhouseCoopers LLP*,
No. 25-1904, slip op. (D. Md. Aug. 28, 2026) ....................8

*Martineau v. Wier*,
934 F.3d 385 (4th Cir. 2019) ....................14, 16, 17, 18

*McAdams v. N. Carolina Dept. of Com.*,
No. COA16-196, 2016 WL 7100566 (N.C. Ct. App. Dec. 6, 2016) ....................20

*McDonnell v. Guildford Cnty. Tradewind Airlines, Inc.*,
S.E.2d 302, 306–07 (N.C. Ct. App. 2009) ....................13

*McKinney v. Cleveland Cnty. Bd. of Educ.*,
No. 20-221, 2020 WL 6803846 (W.D.N.C. Nov. 19, 2020) *aff'd,* No. 22-1697,
2023 WL 4637115 (4th Cir. July 20, 2023) ....................12

*Mikhaylov v. DHS*,
62 F.4th 862 (4th Cir. 2023) ....................10

*Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*,
867 F.3d 449 (4th Cir. 2017) ....................14

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ....................13

*Nhira v. Thompson Hosp.*,
No. 14-676, 2016 WL 4699414 (D. Md. Sep. 8, 2016), *aff'd*, 680 F. App'x
228 (4th Cir. 2017) ....................8

*Renegar v. R.J. Reynolds Tobacco Co.*,
549 S.E.2d 227 (N.C. Ct. App. 2001) ....................12

*Robertson v. Flowers Baking Co. of Lynchburg, LLC*,
No. 11-00013, 2012 WL 830097 (W.D. Va. Mar. 6, 2012), *aff'd*, 474 F. App'x 242 (4th Cir. 2012) ....................14, 15, 16, 18, 19

*Rose v. Beverly Health & Rehab. Servs., Inc.*,
356 B.R. 18 (E.D. Cal. 2006), *aff'd*, 295 F. App'x 142 (9th Cir. 2008)....................14

*Sargent v. Pompeo*,
No. 19-00620, 2020 WL 5505361 (D.D.C. Sept. 11, 2020)....................9

*Stanley v. FCA US, LLC*,
51 F.4th 215 (6th Cir. 2022) ....................19

*Stroud v. Coca-Cola Consol., Inc.*,
No. 25-00733-KDB, 2026 WL 2243978, at *3 (W.D.N.C. Aug. 4, 2026)....................11, 12, 13

*Thomas v. Salvation Army S. Territory*,
841 F.3d 632 (4th Cir. 2016) ....................7

*Vanderheyden v. Peninsula Airport Comm'n*,
No. 12-46, 2013 WL 30065 (E.D. Va. Jan. 2, 2013) ....................19

*Vargas v. Va Military Institute et al.*,
No. 25-00100, 2026 WL 2942926 (W.D. Va. Sept. 30, 2026) ....................10

*Wag More Dogs, LLC v. Cozart*,
680 F.3d 359 (4th Cir. 2012) ....................7

*Wall v. Mountaire Farms Inc.*,
835 F. Supp. 3d 701 (E.D.N.C. 2026)....................12

*Washington v. Cont'l Tire the Ams., LLC*,
No. 20-4056, 2022 WL 4472798, at *5 (D.S.C. Sep. 1, 2022) *report and recommendation adopted*, 2022 WL 4466924 (D.S.C. Sep. 26, 2022) ....................15, 19

*Whitings v. Wolfson Casing Corp.*,
618 S.E.2d 750 (N.C. Ct. App. 2005) ....................12

*Winston v. Livingstone Coll., Inc.*,
707 S.E.2d 768 (N.C. Ct. App. 2011) ....................12

*Wonneman v. Global Grab Technologies Inc.*,
No. 26-1267, 2026 WL 2884156 (D.D.C. Sept. 25, 2026) ....................9

**Statutes**

10 U.S.C. § 4701(a)(1)(A) ....................9

10 U.S.C. § 4701(a)(1)(B) ....................9

10 U.S.C. § 4701(c)(3) ........ 20

11 U.S.C. § 301 ........ 5

11 U.S.C. § 302 ........ 5

11 U.S.C. § 303 ........ 5

11 U.S.C. § 541(a) ........ 5

41 U.S.C. § 4712 ........ 9

41 U.S.C. § 4712(a)(1) ........ 8

41 U.S.C. § 4712(c)(2) ........ 20

42 U.S.C. § 12117(a) ........ 11

Age Discrimination in Employment Act ........ 19

Americans with Disabilities Act ........ *passim*

Defense Contractor Whistleblower Protection Act ........ *passim*

Family and Medical Leave Act ........ 19

N.C. Gen. Stat. § 168A-12 ........ 12

National Defense Authorization Act ........ *passim*

North Carolina's Persons with Disabilities Protection Act ........ 12

Sarbanes-Oxley Act ........ 8

Title VII ........ 11, 19

**Other Authorities**

Fed. R. Bankr. P. 1009(a)(1) ........ 16

U.S. Dep't of Def., Off. of Inspector Gen., Alternative Dispute Resolution (ADR) Program for Whistleblower Reprisal Complaints, https://www.dodig.mil/Components/Administrative-Investigations/Alternative-Dispute-Resolution-ADR-Program-for-Whistleblower-Reprisal-Complaints (last visited Nov. 15, 2026) ........ 16

Defendants Super Micro Computer, Inc. ("Supermicro") and Charles Liang ("Liang," and collectively with Supermicro, "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint, Dkt. No. 1, filed by Plaintiff Joshua Brown ("Plaintiff" or "Brown"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## I. INTRODUCTION

More than three years after Supermicro terminated his employment, Plaintiff Joshua Brown filed this action against Defendants, asserting whistleblower retaliation, disability discrimination, failure to accommodate, and wrongful termination claims. Defendants deny that Brown's termination was unlawful, but even accepting his allegations as true, each of his claims suffers from a legal or procedural defect that warrants dismissal on the pleadings. Moreover, Brown is judicially estopped from pursuing this action given his sworn representations in his bankruptcy action that he had no such claims.

All three counts in the Complaint fail as a matter of law. Brown's whistleblower retaliation claims (Count I) fail because his alleged disclosure is not protected under the National Defense Authorization Act (the "NDAA") or the Defense Contractor Whistleblower Protection Act (the "DCWPA"). As relevant here, the NDAA and DCWPA prohibit retaliation for reports of violations of law relating to federal contracts or grants. However, Brown alleges that he raised a concern about a commercial contract, not a federal contract.

His Americans with Disabilities Act ("ADA") claims (Count II) are barred by his failure to timely exhaust his administrative remedies, and his claim for wrongful termination in violation of North Carolina public policy (Count III) is barred by the applicable three year statute of limitations: Brown filed this action in October 2026, more than three years after his August 2023 termination.

Even if any claim otherwise survives, judicial estoppel independently warrants dismissal of all three counts in the Complaint. In October 2025, Brown filed for Chapter 7 bankruptcy with the assistance of counsel and swore under penalty of perjury that he possessed no claims against third parties, including employment disputes, regardless of whether a lawsuit had been filed. Yet, Brown already had taken concrete steps to pursue his claims and continued to do so throughout his bankruptcy proceedings. In February 2025, Brown's attorney sent a demand letter to Supermicro seeking compensation for claims arising from his August 2023 termination. In August 2025, Brown filed a whistleblower reprisal complaint with the Department of Defense (the "DOD"). He participated in the DOD's Alternative Dispute Resolution program from August 2025 through March 2026, during which time he obtained a discharge of his debts from the Bankruptcy Court. Having obtained bankruptcy relief after representing that he possessed no employment-related claims, Brown should not be permitted to pursue those claims in this action.

Finally, even if a claim survives against Supermicro, Liang is not a proper defendant because none of the asserted causes of action permits individual liability and Brown alleges no facts supporting a claim against him.

For these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

## II. FACTUAL BACKGROUND[1]

Brown's Employment with Supermicro

Supermicro hired Brown in June 2022 as Director of Sales for Team 6, with primary responsibility for driving public sector and federal contractor revenue. Compl. ¶ 10. Brown alleges that he worked from North Carolina and performed duties for public-sector clients in Charlotte

[1] For purposes of this Motion only, Supermicro accepts the allegations in the Complaint as true.

and nationwide. *Id.* ¶¶ 1, 6. In September 2022, Brown was diagnosed with chronic lymphocytic leukemia and alleges that he disclosed his diagnosis to Human Resources and sales management. *Id.* ¶ 11. He continued working full-time without requesting leave. *Id.*

Alleged Protected Activity

Brown alleges that he completed mandatory compliance training on federal export control regulations, including restrictions on selling certain high-performance computing hardware to entities on the U.S. Bureau of Industry and Security's Entity List (the "Entity List"). Compl. ¶ 12. In mid-July 2023, Supermicro's executive leadership and marketing team allegedly distributed a company-wide "internal memo and success story" describing a transaction involving restricted NVIDIA GPU hardware delivered to the University of Science and Technology of China ("USTC"), which Brown alleges was on the Entity List. *Id.* ¶ 13. Brown alleges that he replied to the email, copying senior leadership, including Liang, and warned that federal regulations prohibited Supermicro from selling the "restricted hardware to Chinese entities." *Id.*

Brown's Termination

On or about August 14-17, 2023, Supermicro terminated Brown's employment. *Id.* ¶ 15. Brown alleges that the termination meeting was conducted by Brown's manager, Brian Lahoue, and Liang's spouse, Sara Chiu-Chu Liu Liang. *Id.* ¶ 16.

Brown alleges that he was not provided with a reason for his termination during the meeting. He alleges that he later was told that his termination was based on his performance, particularly his underachievement of $11,133 in revenue against his $2 million quota, which he claims was "unachievable." *Id.*

Brown's Post-Termination Allegations

Brown alleges that, nearly two years after his termination, he met with federal investigators in June 2025 and provided information concerning alleged export control violations. Compl. ¶ 17. Brown also refers to a March 2026 criminal indictment in the Southern District of New York and an August 2026 auditor opinion. *Id.* ¶¶ 18–19.

Brown's Attorney Demand Letter and Whistleblower Reprisal Complaint

On February 27, 2025, Brown's former counsel (Richard R. Renner, Esq., of The Noble Law Firm, PLLC) sent Supermicro a letter threatening to assert "claims under federal law, specifically the National Defense Authorization Act" arising from his August 2023 termination. *See* Ex. 1 (Attorney Demand Letter), at 1. The demand letter refers to Brown's alleged July 2023 email in response to an internal memo regarding "SMCI's deal with a Chinese university" and Supermicro's alleged failure to "suggest or offer him any accommodation for his cancer." *Id.* at 2. He made a settlement demand of over $2,000,000. *Id.* at 6-7. Supermicro's counsel responded to the demand letter and explained the rationale for his termination and why his allegations did not implicate conduct protected by the NDAA. *See* Ex. 2 (Supermicro's Response).[2] Following Supermicro's response, Brown's former counsel ended his representation of Brown, and Brown began proceeding *pro se*.

On August 15, 2025, Brown filed a whistleblower reprisal complaint with DOD and alleged that Supermicro terminated his employment in retaliation for "protected disclosures regarding

[2] The Court may consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment where the documents are integral to the Complaint and their authenticity is not disputed. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Defendants respectfully request that the Court consider the demand letter and Supermicro's response, which concern the same allegations underlying the Complaint. *Id.*; *see also Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018) (considering plaintiffs' demand letter on motion to dismiss).

export control violations and financial misrepresentations." Compl. ¶ 7. From August 2025 through March 2026, Brown "actively participated in the DoD OIG Alternative Dispute Resolution (ADR) program." *Id.* ¶ 8. On March 30, 2026, the DOD closed the matter. *Id.*

Brown's Bankruptcy Action

On October 15, 2025, after his attorney served a demand letter to Supermicro and after he filed a whistleblower reprisal complaint with the DOD, Brown filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of North Carolina (the "Bankruptcy Court"), Case No. 25-50667. *See* Ex. 3 (Bankruptcy Petition).[3] Brown was represented by counsel in his bankruptcy action. *Id.* at 7 (identifying Brett Smith Yauger, Esq. as Brown's bankruptcy counsel). Brown signed and verified that his bankruptcy petition was true and correct under penalty of perjury. *Id.* at 6.

As part of his petition, Brown was required to schedule his assets, including potential claims against third parties, regardless of whether a lawsuit had been filed or a demand for payment had been made. The Bankruptcy Court relies upon the debtor's schedule ("Schedule A/B") because the debtor's property, which includes the debtor's legal claims, becomes property of the bankruptcy estate for dissemination to creditors. 11 U.S.C. §§ 301-03, 541(a). On Schedule A/B, Brown answered "No" to both Item 33, which asks debtors to identify claims against third parties "whether or not you have filed a lawsuit or made a demand for payment," expressly including "employment disputes" and rights to sue, and Item 34, which asks debtors to identify contingent or unliquidated claims.

---

[3] The Court may consider filings from Brown's bankruptcy action (Exs. 2–4) without converting this Motion into one for summary judgment because they are subject to judicial notice. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141, n.1 (4th Cir. 1990) (recognizing that district courts may take judicial notice of bankruptcy court records).

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☒ No
☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
☒ No
☐ Yes. Describe each claim.........

*Id*. at 13. Brown signed and verified once more that the bankruptcy schedules were true and correct under penalty of perjury. *Id.* at 49.

The Statement of Financial Affairs asked Brown to disclose his involvement in lawsuits and administrative proceedings within the past year. Brown listed a matter before the "U.S. Department of Defense Office of Inspector General (OIG)" and described it as a "Wrongful Termination" proceeding. *Id.* at 52. Brown did not check the boxes indicating whether this proceeding was pending, concluded, or on appeal. *Id.* Brown did not disclose that this matter was associated with Defendants or that he intended to pursue any claims against or payment from Defendants.

**Part 4: Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
☒ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| Navy Federal v. Brown<br>25CV002168-750 | Money Owed | Randolph County District Court<br>176 E Salisbury St Ste 201<br>Asheboro, NC 27203 | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| Navy Federal v. Brown<br>25CV002555-750 | Money Owed | Randolph County District Court<br>176 E Salisbury St Ste 201<br>Asheboro, NC 27203 | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| U.S. Department of Defense Office of Inspector General (OIG)<br>Reprisal 20250822-105784-CASE-01 | Wrongful Termination | U.S. Department of Defense Office of Inspector General (OIG)<br>Whistleblower Reprisal Investigations<br>Office of Inspector General<br>United States Department of Defense<br>4800 Mark Center Drive<br>Alexandria, VA 22350-1500 | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

*Id.* at 52. Brown reported $967,266.36 in liabilities in his bankruptcy petition. *Id.* at 8. On January 22, 2026, the Bankruptcy Court entered an order discharging Brown's debts under Chapter 7. *See* Ex. 4 (Order Discharging Debtor). On April 13, 2026, the Bankruptcy Court entered a final decree closing the bankruptcy action. *See* Ex. 5 (Final Decree).

<u>Brown's Complaint</u>

On October 7, 2026, Brown filed the instant Complaint asserting three causes of action against Defendants arising from his August 2023 termination. Count I alleges retaliation under the NDAA and DCWPA. Compl. ¶¶ 20–24. Count II alleges disability discrimination and failure to accommodate under the ADA. *Id.* ¶¶ 25–28. Count III alleges wrongful termination in violation of North Carolina public policy. *Id.* ¶¶ 29–31. Brown seeks monetary damages, including back pay, front pay, lost compensation, compensatory damages, punitive damages, attorneys' fees, and pre- and post-judgment interest. *Id.*, Prayer for Relief.

## III. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the alleged facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.*; *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (explaining that courts need not accept legal conclusions, unwarranted inferences, or unreasonable conclusions when evaluating a motion to dismiss). Mere labels, conclusions, and formulaic recitations of a claim's elements are insufficient. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (holding that threadbare recitals of a claim's elements, supported by conclusory statements, do not suffice). Although courts construe *pro se* complaints liberally, those complaints must still allege sufficient facts to state a plausible claim for relief. *Thomas v. Salvation Army S. Territory*, 841

F.3d 632, 637 (4th Cir. 2016) (explaining that a *pro se* complaint must contain enough facts to state a plausible claim despite the liberal pleading standard).

## IV. ARGUMENT

### A. Brown's Claims Fail as a Matter of Law.

All three counts in Brown's Complaint should be dismissed. His NDAA and DCWPA retaliation claims (Count I) fail because he does not allege that he engaged in activity protected by either statute. His ADA claims (Count II) are time-barred because he did not file a charge of discrimination within the applicable 180-day timeframe. His claim of wrongful termination in violation of North Carolina public policy (Count III) is time-barred because he filed the Complaint after the three-year statute of limitations expired.

#### 1. Brown Fails to State NDAA and DCWPA Retaliation Claims.

In Count I, Brown alleges that Defendants terminated his employment in retaliation for making disclosures protected by the NDAA and DCWPA. Compl. ¶¶ 13–15, 20–24.[4] However, Brown's allegations concern a ***commercial contract***, not a federal contract. *Id.* The NDAA and DCWPA are not general whistleblower laws and only protect disclosures within the categories specified in each statute. As relevant here, the NDAA protects disclosures of information an employee reasonably believes evidence "a violation of law, rule, or regulation related to a Federal contract . . . or grant." 41 U.S.C. § 4712(a)(1). The DCWPA provides parallel protection for

---

[4] Brown makes a passing reference to the Sarbanes-Oxley Act ("SOX") in his Complaint (Compl. ¶ 4), but any claim under that statute fails because he did not exhaust his administrative remedies. SOX requires an employee to file a complaint within 180 days of the alleged violation with the Occupational Safety and Health Administration, but Brown did not do so. *Nhira v. Thompson Hosp.*, No. 14-676, 2016 WL 4699414, at *4 (D. Md. Sep. 8, 2016) (recognizing SOX's 180-day OSHA filing requirement), *aff'd*, 680 F. App'x 228 (4th Cir. 2017); *MacBagito v. PricewaterhouseCoopers LLP*, No. 25-1904, slip op. at 8 (D. Md. Aug. 28, 2026) (dismissing SOX claim for failure to timely exhaust administrative remedies).

disclosures of suspected violations related to DOD or National Aeronautics and Space Administration contracts or grants. 10 U.S.C. § 4701(a)(1)(A)–(B).

The NDAA and DCWPA do not protect every complaint relating to federal contractor misconduct. Under the provisions Brown invokes, the reported violation must relate to a covered federal contract or grant. *See, e.g.*, *Ficarra v. SourceAmerica*, No. 19-01025, 2020 WL 1606396, at *4–5 (E.D. Va. Apr. 1, 2020) (dismissing NDAA and DCWPA claims because reported misconduct involved commercial contracts and lacked the required nexus to a federal contract); *Sargent v. Pompeo*, No. 19-00620, 2020 WL 5505361, at *15 (D.D.C. Sept. 11, 2020) (denying leave to add NDAA claim because reported misconduct was not "related to Federal contract" and concluding, "[t]o expand the reach of § 4712 to encompass any misconduct or illegal discrimination occurring within the context of a federal contract would stretch the statute's text beyond its plain meaning"). Although an employee need not establish that an actual violation of law occurred, the complaint must allege facts supporting an objectively reasonable belief that the reported conduct implicated a federal contract or grant. *See, e.g.*, *Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1217–18 (9th Cir. 2023) (affirming dismissal where allegations of reported misconduct were not sufficiently related to employer's DOD contract); *Wonneman v. Global Grab Technologies Inc.*, No. 26-1267, 2026 WL 2884156, at *8 (D.D.C. Sept. 25, 2026) ("Conspicuously absent from the complaint are allegations providing the required 'nexus' between [. . .] alleged misconduct and the terms of the federal contract that defendant was tasked with performing.").

Here, Brown alleges an export control violation by a federal contractor, but no facts connecting that violation to a federal contract or grant. Brown's alleged disclosure concerned a transaction with the USTC. Compl. ¶ 13. He claims that he sent a mid-July 2023 email warning

executives that "SMCI was prohibited under federal regulations from selling such restricted hardware to Chinese entities." *Id.* ¶ 14. But even accepting that Brown reasonably believed that the alleged transaction violated federal export control laws, the Complaint identifies no connection between that transaction and a federal contract or grant.[5]

Brown's conclusory assertion that his July 2023 email concerned violations "relating to federal contracts" (Compl. ¶¶ 21–22) is insufficient to establish protected activity. Brown has not identified a particular federal contract or grant that was subject to a violation of law. *See, e.g.*, *Vargas v. Va Military Institute et al.*, No. 25-00100, 2026 WL 2942926, at *13 (W.D. Va. Sept. 30, 2026) (dismissing NDAA and DCWPA retaliation claims despite plaintiff's allegation that he reported violations "in connection with Department of Defense contracts" because he "has not alleged a particular federal contract or grant that is being mismanaged or otherwise subject to legal violations"); *see also Iqbal*, 556 U.S. at 678 (holding that conclusory allegations unsupported by well-pleaded facts are insufficient to state a claim). Supermicro's status as a federal contractor does not transform an alleged export control violation *in a commercial transaction* into misconduct related to a federal contract. *See, e.g.*, *Vargas*, 2026 WL 2942926, at *13; *Ficarra*, 2020 WL 1606396, at *4–5.

[5] Brown's post-termination allegations regarding his June 2025 meeting with federal investigators, the March 2026 indictment, and the August 2026 audit opinion do not cure this deficiency. Compl. ¶¶ 15, 17–19. Even assuming these events corroborate alleged misconduct by Defendants (which Defendants deny), they do not supply the missing nexus because these allegations do not connect his alleged July 2023 email to a federal contract or grant. *Id.* ¶¶ 18–19. Moreover, Brown's June 2025 cooperation with federal investigators could not have contributed to the earlier decision to terminate his employment in August 2023. *See, e.g.*, *Krzesni v. Wellpinit Sch. Dist.*, 182 F.4th 1147, 1156 (9th Cir. 2026) ("An adverse action that preceded a purported disclosure could not have been taken in retaliation for that disclosure.") (citing *Mikhaylov v. DHS*, 62 F.4th 862, 868–69 (4th Cir. 2023); *Horton v. Dep't of Navy*, 66 F.3d 279, 284 (Fed. Cir. 1995))).

Because Brown has not plausibly alleged that he made a disclosure protected by either statute, his NDAA and DCWPA retaliation claims (Count I) should be dismissed.

### 2. Brown's ADA Claims Must Be Dismissed for Failure to Exhaust Administrative Remedies.

In Count II, Brown asserts claims of disability discrimination and failure to accommodate under the ADA. Compl. ¶¶ 25–28. Under the ADA, an employee must exhaust administrative remedies before filing a lawsuit. *Harris v. American Airlines, Inc.*, No. 17-00280, 2017 WL 2880400, at *1 (W.D.N.C. Jul. 6, 2017). "Relevant here, the EEOC charge must be filed within 180 days of *each alleged discrete act of discrimination* under the ADA." *Stroud v. Coca-Cola Consol., Inc.*, No. 25-00733-KDB, 2026 WL 2243978, at *3 (W.D.N.C. Aug. 4, 2026) (Bell, J.) (concluding ADA claims were limited to acts of discrimination within 180 days of filing EEOC charge in case brought by *pro se* plaintiff); 42 U.S.C. § 12117(a). An employee who fails to file a charge within the 180-day timeframe "cannot seek redress in federal court for an employer's alleged discriminatory conduct" under the ADA. *Id.* (citing *Hospodor v. Burlington Indus., Inc.*, 205 F.3d 1333, 2000 WL 203933, at *1 (4th Cir. 2000) (unpublished table decision)); *see also Harris*, 2017 WL 2880400, at *1; *Fullard v. City of Raleigh*, No. 23-49, 2024 WL 232185, at *1 (E.D.N.C. Jan. 22, 2024) (dismissing Title VII claims subject to same exhaustion requirement because plaintiff failed to file EEOC charge within 180-day period).

Here, Brown did not file a charge of discrimination, and the required 180-day timeframe has long since elapsed. Supermicro terminated Brown's employment between August 14 and 17, 2023, making February 13, 2024, the latest possible deadline for Brown to file a charge of discrimination with the EEOC. Compl. ¶ 15. To Defendants' knowledge, Brown never filed an EEOC charge, and the Complaint contains no allegation that he did so. Accordingly, Brown's ADA claims are time-barred and must be dismissed. *Hospodor*, 2000 WL 203933, at *1; *Stroud*,

2026 WL 2243978, at *3; *Wall v. Mountaire Farms Inc.*, 835 F. Supp. 3d 701, 714 (E.D.N.C. 2026) (dismissing plaintiff's ADA claim because it was time barred due to failure to file EEOC charge within 180 days of termination).[6]

### 3. Brown's Wrongful Termination Claim Is Barred by the Statute of Limitations.

In Count III, Brown asserts a claim of wrongful termination in violation of North Carolina public policy. North Carolina recognizes a "narrow exception to the general rule that an at-will employee can be fired for any reason or no reason." *Stroud*, 2026 WL 2243978, at *13. The exception is "confined to the express statements within [the North Carolina] General Statutes or . . . Constitution." *Id.* (citing *Whitings v. Wolfson Casing Corp.*, 618 S.E.2d 750, 753 (N.C. Ct. App. 2005). . North Carolina applies a three-year statute of limitations to claims for wrongful termination in violation of public policy. *Winston v. Livingstone Coll., Inc.*, 707 S.E.2d 768, 770 (N.C. Ct. App. 2011) (recognizing three-year limitations period for claims of wrongful termination in violation of public policy). The claim accrues upon the termination. *Renegar v. R.J. Reynolds Tobacco Co.*, 549 S.E.2d 227, 229 (N.C. Ct. App. 2001) (holding that the three-year limitations period begins to run on the date of the employee's termination).

Here, Brown filed the Complaint more than three years after his termination. Brown alleges that Supermicro terminated his employment "on or about August 14–17, 2023." Compl. ¶ 15. Accepting August 17, 2023, as the termination date, the three-year limitations period expired on

---

[6] To the extent Brown seeks to assert a disability-related claim under North Carolina's Persons with Disabilities Protection Act ("NCPDPA"), that claim also is time-barred. The NCPDPA likewise requires employment discrimination claims to be filed within 180 days. N.C. Gen. Stat. § 168A-12; *McKinney v. Cleveland Cnty. Bd. of Educ.*, No. 20-221, 2020 WL 6803846, at *7 (W.D.N.C. Nov. 19, 2020) ("Plaintiff is also time-barred from bringing this claim under the NCPDPA because she was terminated on December 14, 2018—more than 180 days from the date the original Complaint was filed in state court on March 17, 2020.") *aff'd*, No. 22-1697, 2023 WL 4637115 (4th Cir. July 20, 2023).

August 17, 2026. However, Brown did not file this action until October 7, 2026. *See* Compl. Accordingly, Brown's wrongful discharge claim (Count III) is time-barred and must be dismissed. *See, e.g., Harris v. Cmty. Alts.*, No. 11-52, 2011 WL 2111851, at *2 (E.D.N.C. May 26, 2011) (dismissing North Carolina wrongful termination claim as untimely because plaintiff filed suit more than three years after termination).[7]

**B. As an Independent Basis for Dismissal, Brown Should Be Judicially Estopped from Pursuing His Claims.**

Even if any claim could survive the pleadings, Brown is estopped from pursuing these claims because he denied possessing them in his sworn bankruptcy petition. Judicial estoppel prevents a litigant from taking a position inconsistent with one accepted by a court in an earlier proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (explaining that judicial estoppel protects the integrity of the judicial process by preventing parties from asserting inconsistent positions in successive proceedings). "[A] debtor may be precluded from pursuing claims about which [h]e was aware of, but did not disclose during the bankruptcy proceedings." *Crawford v. Newport News Indus. Corp.*, No. 14-130, 2018 WL 3232827, at *6 (E.D. Va. Feb. 12, 2018), *report and recommendation adopted*, 2018 WL 1588024 (E.D. Va. Apr. 2, 2018).

In the Fourth Circuit, judicial estoppel applies when (1) the litigant takes a position inconsistent with one asserted in an earlier proceeding, (2) the position concerns a fact rather than a legal theory, (3) the earlier position was accepted by the court, and (4) the litigant acted

---

[7] Even if Brown's wrongful termination claim has been timely, the Complaint does not allege a specific violation of North Carolina public policy that satisfies the "narrow exception to the general rule that an at-will employee can be fired for any reason or no reason." *Stroud*, 2026 WL 2243978, at *3; *see also id.* ("ADA-based activity" cannot supply the necessary North Carolina public policy predicate to establish wrongful discharge claim); *McDonnell v. Guildford Cnty. Tradewind Airlines, Inc.*, S.E.2d 302, 306–07 (N.C. Ct. App. 2009) (holding that federal regulation "in and of itself" was not statement of North Carolina public policy).

intentionally, not inadvertently. *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 458 (4th Cir. 2017). Whether a debtor's omission was intentional must be assessed from the totality of the circumstances, not merely knowledge of the claims or a financial motive to omit them. *Keathley v. Buddy Ayers Constr., Inc.*, 608 U.S. 647, 655–57 (2026); *Martineau v. Wier*, 934 F.3d 385, 395 (4th Cir. 2019).

The first three elements are satisfied. In the instant action, Brown asserts three causes of action arising from his August 2023 termination and seeks monetary damages. Compl. ¶¶ 20–31; Prayer for Relief. This directly contradicts Brown's sworn representation in his bankruptcy action that he possessed no claims against third parties, including employment disputes, regardless of whether a lawsuit has been filed. Ex. 2, at 13; *see, e.g.*, *Robertson v. Flowers Baking Co. of Lynchburg, LLC*, No. 11-00013, 2012 WL 830097, at *3 (W.D. Va. Mar. 6, 2012) (plaintiff's assertion of employment claim was factually inconsistent with his prior bankruptcy representation that he possessed no claims), *aff'd*, 474 F. App'x 242 (4th Cir. 2012).[8] This inconsistency concerns the existence of Brown's claims – a factual position – not their legal merits. *See, e.g.*, *Crawford*, 2018 WL 3232827, at *6 (failure to disclose the existence of a claim is a representation of fact, not law); *Robertson*, 2012 WL 830097, at *6 (same). The Bankruptcy Court accepted this earlier, inconsistent position. After representing that he possessed no employment-related claims, the

[8] Brown's disclosure obligation extended to all three counts in this action, not merely the whistleblower retaliation claim he already had filed with the DOD. His ADA and North Carolina claims likewise arose from his August 2023 termination, and he was required to disclose them. *Robertson*, 2012 WL 830097, at *3 (concluding "even the underlying facts that might support a discrimination claim" constitute "an asset that must be disclosed to the bankruptcy court"); *see also Rose v. Beverly Health & Rehab. Servs., Inc.*, 356 B.R. 18, 26 (E.D. Cal. 2006) (explaining "'claim' incorporates any potential cause of action that has accrued and whose facts are sufficiently well known to the [p]laintiff to indicate the existence of a potential asset" (citing *Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555 (9th Cir. 1992))), *aff'd*, 295 F. App'x 142 (9th Cir. 2008).

Bankruptcy Court granted Brown a Chapter 7 discharge of debts on January 22, 2026, and closed his case on April 13, 2026. Exs. 3-4; *see, e.g.*, *Crawford*, 2018 WL 3232827, at *7 (plaintiff's position that he had no claims "was accepted by the Bankruptcy Court when it discharged all of [plaintiff's] debts"); *Robertson*, 2012 WL 830097, at *6 (finding acceptance where bankruptcy court discharged the debtor's debts and closed the case).

Based on well-established case law, the instant circumstances establish the intent required for judicial estoppel. Brown took concrete steps to obtain payment for his claims against Defendants before filing for bankruptcy. Supermicro terminated Brown's employment in August 2023. Compl. ¶ 15. On February 27, 2025, his prior counsel sent a demand letter to Supermicro asserting employment claims arising from that termination and seeking more than $2,000,000 in compensation. Ex. 1. This letter specifically referenced NDAA retaliation claims and Supermicro's alleged failure to accommodate Brown. *Id.* at 1–2. On August 15, 2025, Brown filed a whistleblower reprisal complaint with the DOD. Compl. ¶ 7. When Brown filed his bankruptcy petition on October 15, 2025, he was not merely aware of facts that might someday support a claim. He had retained counsel, demanded payment, and initiated an administrative proceeding to pursue relief for the termination that he challenges in this action. Yet, Brown swore under penalty of perjury that he had no such claims. Item 33 of Schedule A/B required disclosure of "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," and specifically identified "employment disputes" and "rights to sue." Ex. 2, at 13. Item 34 separately asked about other contingent and unliquidated claims. *Id.* Brown answered "No" to both questions. *Id.* Those questions required him to disclose the existence of an employment dispute – the very dispute for which he had already demanded compensation, was pursuing administrative relief, and asserts in the instant action. *See, e.g.*, *Washington v. Cont'l Tire the Ams., LLC*, No. 20-4056, 2022

WL 4472798, at *5 (D.S.C. Sep. 1, 2022) (finding intent where plaintiff filed administrative charge with employment claim while bankruptcy action was pending), *report and recommendation adopted*, 2022 WL 4466924 (D.S.C. Sep. 26, 2022); *Robertson*, 2012 WL 830097, at *6 (same).

Brown's pursuit of his claims continued during the pendency of his bankruptcy action. Brown's duty to disclose his claims did not end when he filed his bankruptcy petition in October 2025. He was under a continuing obligation to correct any known omissions from his bankruptcy schedules. Fed. R. Bankr. P. 1009(a)(1); *Martineau*, 934 F.3d at 396 (recognizing debtor's continuing duty to disclose legal claims). Nevertheless, Brown alleges that he "actively participated in the DoD OIG Alternative Dispute Resolution (ADR) program from August 2025 through March 2026." Compl. ¶ 8. That program facilitates resolution of retaliation complaints through mediation or settlement negotiations.[9] Brown thus was pursuing a resolution of his retaliation claim while he filed for bankruptcy in October 2025 and received a discharge of debts on January 22, 2026. The DOD proceeding closed on March 30, 2026, only two weeks before the bankruptcy court closed his Chapter 7 case on April 13, 2026. *Id.* ; Exs. 3–4. Brown never sought to correct or amend his disclosures despite his ongoing statutory duty to do so and his knowledge and simultaneous pursuit of his undisclosed employment claims.

This is a material distinction from *Martineau* , 934 F.3d at 385. In *Martineau*, the court reversed the district court's application of judicial estoppel and emphasized that the debtor (1) was unrepresented in bankruptcy; (2) had not taken steps to pursue the omitted claims, "believing that her settlement agreement barred her from proceeding"; and (3) could have misunderstood the

---

[9] U.S. Dep't of Def., Off. of Inspector Gen., Alternative Dispute Resolution (ADR) Program for Whistleblower Reprisal Complaints, https://www.dodig.mil/Components/Administrative-Investigations/Alternative-Dispute-Resolution-ADR-Program-for-Whistleblower-Reprisal-Complaints (last visited Nov. 15, 2026).

question regarding possession of claims in her bankruptcy schedules. *Id.* at 395 n.6. None of those considerations apply here. Here, Brown was represented in his bankruptcy action and had been actively pursuing his claims before and during its pendency. The debtor in *Martineau* filed for bankruptcy in June 2015 and completed "Schedule B" – an older form of bankruptcy schedules in use at that time. *Id.* at 388. Effective December 1, 2015, the United States District Court bankruptcy schedules were substantially revised for ease of understanding, including to explain in plain English that employment-related claims like Brown's must be disclosed. *Compare* Official Form 6B, Schedule B – Personal Property, item 21 (Dec. 2007) (superseded Dec. 1, 2015) ("Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."), *with* Official Form 106A/B, Schedule A/B: Property, item 33 (Dec. 2015) ("Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. *Examples*: Accidents, employment disputes, insurance claims, or rights to sue."). Under penalty of perjury, Brown expressly denied having any employment disputes, including claims not yet asserted in a lawsuit. *See, e.g.*, *Henderson v. Franklin*, 782 F. App'x 866, 872 (11th Cir. 2019) (affirming judicial estoppel where "[t]he district court also considered that [debtor] was specifically asked on his property schedule to list any claims 'whether or not [he had] filed a lawsuit or made a demand for payment.' That question directly rebuts [debtor's] argument that his inconsistency should be excused because he did not know that he had to disclose unfiled claims.").

Although he now proceeds *pro se*, Brown was represented by counsel in his bankruptcy action, including in preparing his bankruptcy petition and schedules. His bankruptcy petition identifies Brett Smith Yauger of Rowland & Yauger as his attorney. Ex. 2, at 7. Counsel's representation included preparing and filing the petition, schedules, and Statement of Financial

Affairs. *Id.* at 66. Brown declared under penalty of perjury that he had read the schedules and that they were true and correct. *Id.* at 49. Courts even have estopped *pro se* plaintiffs from pursuing undisclosed employment claims where the circumstances demonstrate that they acted with the requisite intent. *See*, *e.g.*, *Robertson*, 2012 WL 830097, at *6 (applying judicial estoppel to ADA claims that *pro se* plaintiff failed to disclose in bankruptcy).

Brown's identification of the DOD proceeding in his Statement of Financial Affairs does not remedy his sworn representation that he did not possess claims on Schedule A/B. The two forms serve different purposes. Question 9 of the Statement of Financial Affairs asks whether the debtor was involved in a legal proceeding within the year preceding bankruptcy. It seeks the case title, nature of the proceeding, court or agency, and status. This question encompasses litigation history, including concluded proceedings, not identification of claims available to creditors. Ex. 2, at 52; *Martineau*, 934 F.3d at 395 n.6 (recognizing Statement of Financial Affairs requests information about past or existing proceedings, rather than future lawsuits). Brown's response identified a DOD reprisal proceeding, described its nature as "Wrongful Termination," and supplied an administrative case number. Ex. 2, at 52. But he did not identify Supermicro or Liang as parties, disclose that his counsel had demanded compensation for his termination just a few months earlier, or indicate that the proceeding could result in a potential monetary recovery. Brown also left the status boxes unchecked, failing to identify whether the proceeding was pending, concluded, or on appeal. *Id.* This entry did not notify the Bankruptcy Court or Brown's creditors that the matter remained pending, nor that Brown was seeking compensation from Defendants for claims that he swore he did not possess.

Courts within the Fourth Circuit have repeatedly applied judicial estoppel to bar employment claims that debtors failed to disclose in bankruptcy. *See, e.g.*, *Crawford*, 2018 WL

1588024, at *5 (adopting recommendation to bar five employees' discrimination claims where they failed to disclose pending or potential claims in bankruptcy, notwithstanding belated efforts to correct certain omissions); *Vanderheyden v. Peninsula Airport Comm'n*, No. 12-46, 2013 WL 30065, at *11–14 (E.D. Va. Jan. 2, 2013) (finding judicial estoppel barred Title VII claims where employee failed to disclose them and subsequently received a Chapter 7 discharge); *Robertson*, 2012 WL 830097, at *5–7 (finding judicial estoppel barred ADA claims where the employee pursued them during bankruptcy but failed to disclose the claims). Like here, in *Stanley v. FCA US, LLC*, 51 F.4th 215 (6th Cir. 2022), the court affirmed estoppel where the employee pursued an undisclosed employment claim after filing for bankruptcy, reasoning that "ignorance of the law is generally not an excuse." *Id.* at 221. The United States Supreme Court cited *Stanley* as an example of the fact-specific inquiry that it recently endorsed in *Keathley*, 608 U.S. at 654 n.4; *see also Henderson*, 782 F. App'x at 872 (applying judicial estoppel after considering express disclosure questions and omissions). In a post-*Martineau* decision within the Fourth Circuit, a district court adopted a magistrate judge's recommendation of judicial estoppel even though the plaintiff's Age Discrimination in Employment Act and Family and Medical Leave Act claims arose ***after*** the plaintiff filed for bankruptcy and where the bankruptcy action was dismissed for non-compliance before a full discharge of debts. *Washington*, 2022 WL 4472798, at *5–6.

Allowing Brown to maintain this action would permit him to seek recovery on claims he expressly denied possessing when obtaining bankruptcy relief – the very inconsistency judicial estoppel is designed to prevent. Brown did not merely overlook the possibility of future litigation. He demanded compensation from Defendants for his claims before filing bankruptcy, affirmed under penalty of perjury, with representation of counsel, that he had no such claims, and continued

to pursue resolution of his claims while his bankruptcy action remained open. Accordingly, Brown should be judicially estopped from pursuing his claims.

### C. Liang Is Not a Proper Defendant.

All three counts should be dismissed against Liang because none permits individual liability against a corporate officer who is neither Brown's employer, nor a covered federal contractor. The NDAA and DCWPA authorize civil actions against a "contractor, subcontractor, grantee, subgrantee, or personal services contractor," not corporate officers. 10 U.S.C. § 4701(c)(3); 41 U.S.C. § 4712(c)(2). The ADA likewise does not permit claims against individuals. *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam) (holding that the ADA does not provide a cause of action against defendants in their individual capacities). Under North Carolina law, claims of wrongful termination in violation of public policy may be brought only against the employer, not its officers or agents. *McAdams v. N. Carolina Dept. of Com.*, No. COA16-196, 2016 WL 7100566, at *4 (N.C. Ct. App. Dec. 6, 2016); *Lorbacher v. Hous. Auth. of the City of Raleigh*, 493 S.E.2d 74, 79 (N.C. Ct. App. 1997). Moreover, Brown alleges no wrongdoing by Liang that could support a claim against him. Accordingly, even if any claim survives this Motion, Liang should be dismissed as a defendant.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: November 24, 2026

Respectfully Submitted,

By: *s/Emily Pera Stevenson*

**MOORE & VAN ALLEN PLLC**
Emily Pera Stevenson (NC Bar No. 53137)
John A. Zaloom (NC Bar No. 30557)
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Fax: (704) 331-1159
emilystevenson@mvalaw.com
johnzaloom@mvalaw.com

**MORGAN, LEWIS & BOCKIUS LLP**
Sarah Bouchard (*pro hac vice* admission pending)
Sean Caulfield (*pro hac vice* admission pending)
2222 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
sarah.bouchard@morganlewis.com
sean.caulfield@morganlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Emily Pera Stevenson, hereby certify that on November 24, 2026, the foregoing was filed and served via the Court's ECF system on all counsel of record.

*/s/ Emily Pera Stevenson*